STATE OF MISSOURI ex relatione ELISABETH MUTH, MARGARETA WIEGAND, JUSTINE HENKEL, HEINRICH MANN, GERTRUDE LAUER, and CHRISTIAN MANN, Relators, v. PAUL A. BUZARD, Judge of Division No. 8, Circuit Court of Jackson County, Missouri, at Kansas City —No. 40332.—205 S. W. (2d) 538.

Court en Banc, November 10, 1947.

Leon Lecour Drolet, Chief, Estates and Trust Section, Chicago Office of Alien Property, Department of Justice of United States and William G. Boatright for relators.

1150

1151

*Ben W. Swofford, Robert L. Jackson* and *Swofford, Jackson & Shankland* for respondent.

1154

TIPTON, C. J.—This is an original proceeding in prohibition to prohibit the respondent as judge of the circuit court of Jackson County, Missouri, at Kansas City, from sustaining a motion in the nature of a writ of error *coram nobis*, thereby vacating a judgment which set aside the will of Conrad H. Mann in the case of Emma Mann v. Margaret V. NaPier et al. There was no motion for a new trial and no appeal was taken in that case, and it is relators' contention that respondent is without judicial power to set aside the judgment. Respondent in his return denies that the judgment is valid for the reason the will contest suit was instituted by a person not interested in the probate of the last will and testament of Conrad H. Mann, deceased, and, therefore, respondent was without jurisdiction to entertain and determine that action.

Conrad H. Mann, a German national, for many years prior to his death lived in Kansas City, Missouri, and died there on December 27, 1943. He left surviving him his widow Emma Mann, but no child or children or descendants of any child or children. He left a will purported to have been executed on July 27, 1943. By this purported will he made bequests principally for the benefit of his widow, his secretary and the members of her family. There were in addition some bequests for charitable institutions, certain bequests for the relatives of his widow (nephews and nieces) and a bequest of $2,500 for his chauffeur. The bequests to the widow's relatives were contingent upon her acceptance of this purported will, otherwise to lapse. This purported will provided that after payment of certain specific bequests the estate should be held in trust during the lifetime

of the widow and secretary, and to be administered by the Commerce Trust Company. Eugene Balsiger and John P. Mullane were named executors.

The purported will was presented and filed in the probate court of Jackson County, Missouri, at Kansas City, on January 3, 1944. It was admitted to probate and letters testamentary granted. On February 5, 1944, the widow, Emma Mann, elected to take one-half of the estate under Sections 329-333, R. S. Mo., 1939. On the same day she filed in the circuit court of Jackson County, Missouri, a petition to contest the validity of the purported will on the grounds of lack of testamentary capacity, undue influence and duress. Her petition alleged she was the widow and sole heir-at-law of Conrad H. Mann who died without leaving surviving him any child or children or their descendants, or father, mother, brothers, sisters or their de-scendants. ▮▮▮ The petition also made all the beneficiaries named in the will, the Commerce Trust Company, Eugene Balsiger and John P. Mullane defendants.

Defendants Curt H. Conrad, Ray Conrad, Edna Ebert, James Conrad and Jean Conrad, nieces and nephews of Emma Conrad, and Phil Steil, chauffeur of Conrad H. Mann, filed an answer to plain-tiff's petition in which they neither affirmed nor denied any of the allegations of the petition. The executors, Eugene Balsiger and John P. Mullane, filed an answer alleging that they were neutral in the cause. The other ten defendants filed answers directly chal-lenging the right of Emma Mann to maintain the will contest be-cause they denied that she was the sole heir of Conrad H. Mann, and alleged on information and belief that he left surviving him brothers or sisters or their descendants. Each answer alleged that plaintiff had filed in the probate court a renunciation to accept the provisions made for her by the purported will and had elected to take one-half of the estate, and that she had no authority or legal right to main-tain the contest because she had no pecuniary interest in the probate of the purported will.

On May 4, 1945, the attorneys for the plaintiff and defendants ap-peared and announced ready for trial, and in open court waived trial by jury. Evidence was heard by the respondent judge. There was evidence to the effect that Conrad H. Mann's father and mother were dead, and that he left surviving him no brothers or sisters, or any descendants of brothers or sisters. On the same day the respondent rendered a judgment specifically finding and adjudging Emma Mann to be the sole heir-at-law and next-of-kin and interested in the probate of the purported last will of Conrad H. Mann, and further finding that Conrad H. Mann was without testamentary capacity, that the paper writing was not his last will and testament, and that he died intestate.

None of the parties to the will contest suit filed a motion for a new trial, but immediately following rendition of the judgment waived their right of appeal and a record entry was made to that effect. Following the rendition of the judgment, a stipulation of the parties was filed in the will contest suit.

On May 17, 1945, the Alien Property Custodian of the United States, pursuant to the authority vested in him by the Trading with the Enemy Act, as amended, and Executive Order 9095, as amended, appointed and empowered William G. Boatright, a member of the Bar of Missouri, and Leon Lecour Drolet, a member of the Bar of Illinois and chief of the Estates and Trusts Section of the Chicago Office of Alien Property, "to appear for and represent Johannes Mann and brothers and sisters of Conrad H. Mann, deceased, (names unknown), and descendants of brothers and sisters of Conrad H. Mann, deceased, (names unknown), persons within a designated enemy country, in the matter of the estate of Conrad H. Mann, deceased, a case now pending in the Probate Court, County of Jackson, State of Missouri, No. 54479, and to take such measures in connection with representing such persons as may from time to time be determined by me or by my duly authorized representative."

On May 18, 1945, there was made in the probate court by these designated attorneys an entry of appearance of these relators. The entry of appearance alleged that the persons whose appearances were thereby entered were, under the laws of Missouri, entitled to inherit, receive and have distributed to them, subject to the right of the widow, all of the estate, but subject to the rights and powers of the Alien Property Custodian. This entry stated that it was made on behalf of Johannes Mann, father of Conrad H. Mann, and Conrad H. Mann's brothers and sisters whose names were unknown.

Thereafter, on January 10, 1946, these designated attorneys filed an amended entry of appearance which was similar to the original entry of appearance except that it gave the names of Conrad H. Mann's brothers and sisters. In September, 1946, depositions were taken in Germany and were returned and filed in the probate court of Jackson County in October, 1946. These depositions established the existence and identity of relators as the surviving brothers and sisters of Conrad H. Mann.

After obtaining leave of respondent, Curt H. Conrad, Ray Conrad, Edna Ebert, James Conrad and Jean Conrad, relatives of Emma Mann, and Phil Steil, the chauffeur, filed a motion in the nature of a petition for writ of error *coram nobis*, wherein they seek to have the judgment which was entered May 4, 1945, in the will contest set aside. The ground stated in this motion is that Emma Mann had no pecuniary interest in the probate of the purported will that would entitle her under the law to institute and maintain a suit to contest the same. In their motion they admit that Emma Mann's pecuniary

interest and right to maintain the will contest was put in issue in the suit, that evidence was heard on that issue and judgment was rendered thereon. They contend that the judgment was void because the evidence offered and received on the issue was not competent; that they believed at the time of trial that Conrad H. Mann died without leaving surviving any brothers or sisters and that such belief was induced by misrepresentations made by him during his lifetime; and that subsequent to the time the judgment became final there was newly discovered evidence which revealed that relators were surviving brothers and sisters of Conrad H. Mann. They further allege if this newly discovered evidence had been presented to respondent he would not have entered the judgment that was entered in the will contest suit but would have dismissed it for lack of capacity of Emma Mann to institute and maintain that suit. They ask that respondent set aside the judgment.

We agree with respondent that the right to contest the validity of a purported will is statutory and the provision of the statute must be strictly complied with before a party has a right to maintain a will contest suit. State ex rel. Damon v. McQuillin, 246 Mo. 674, 152 S. W. 341. The right of a person to contest the validity of a will is governed by Section 538, R. S. Mo. 1939. That section provides that "any person interested in the probate of any will shall appear within one year after the date of the probate or rejection thereof, and, by petition to the circuit court of the county, contest the validity of the will, . . . " So, therefore, before a person can institute a will contest suit he must allege and prove that he has a financial interest in the estate and his interest is such that he would be benefited by setting aside the will. State ex rel. Damon v. McQuillin, supra.

In her petition Emma Mann alleged that she was the widow and sole heir-at-law of Conrad H. Mann who died without leaving surviving him any child or children or their descendants, or father, mother, or brothers, sisters or their descendants. The petition therefore alleged facts that would show she had a financial interest in setting aside the will, this for the reason that she would inherit all of his net estate if the will were set aside. The only evidence on this point in the case sustained this allegation. The answers of the defendants challenge the fact that she was his sole heir-at-law. The respondent by his judgment found that she was his sole heir-at-law. So, on the face of the record, the respondent's judgment is valid and it became final thirty days after its rendition since no motion for new trial or appeal was taken.

"In this State a motion to vacate a judgment for error of fact, and not for patent error of record, supported by evidence *dehors* the record, takes the place of the common-law writ of error *coram nobis*, and is in the nature of an independent and direct attack upon the judg-

1158

ment of the court committing the error.'' Simms v. Thompson, 291 Mo. 493, l. c. 514, 236 S. W. 876.

The error of fact alleged in the motion pending before the respondent is that Conrad H. Mann died survived by brothers and sisters who are the relators in this proceeding, while the respondent in his judgment entered in the will contest found to the contrary. Treating the motion pending before the respondent as a motion in the nature of a writ of error *coram nobis,* it will not lie because it attacks the record and the verity thereof of the circuit court of Jackson County. This can never be done in writs of error *coram nobis.* In other words, the error of fact charged in the motion for a writ of error *coram nobis* must be consistent with the record in the case. It cannot attack the verity of the record. Reed v. Bright, 232 Mo. 399, 134 S. W. 653; Jeude v. Sims, 258 Mo. 26, 166 S. W. 1048; Simms v. Thompson, supra; In re Sheldon's Estate, 354 Mo. 232, 189 S. W. 2d 235.

Respondent asks us to review the motion as an equitable action. This we cannot do, even if the motion stated equitable grounds for relief. Simms v. Thompson, supra.

From what we have said, it follows that respondent does not have jurisdiction to entertain the motion in the nature of a writ of error *coram nobis.*

Respondent contends that since relators are strangers to the will contest suit, they cannot maintain this action for prohibition. He contends that after the expiration of one year after the probate of the will they could not become parties to the suit, and any attempted intervention by relators in the litigation below must be denied because the time for appeal has elapsed. He further contends that they seek to accomplish by indirection and subterfuge the intervention which the law denies them by attempted use of the extraordinary writ of prohibition.

The fallacy with respondent's position is that relators are not seeking to sustain their rights by intervention in the will contest suit but, instead, to inherit from Conrad H. Mann under the law of descent and distribution of this state.

In the case of State ex rel. Darst et al. v. Wurdeman, Judge, 304 Mo. 583, 264 S. W. 402, l. c. 404, we said:

''The relators in this case are mere citizens and voters, and not parties to the contest proceedings, in which it is alleged the court is exceeding its jurisdiction. At first blush their right to proceed appeared to be a question. At common law the keeping of the courts within their jurisdiction was a matter of great public concern, and one in which not only the sovereign, but the subjects were alike interested; so that, when the common law has not been abrogated, it is by no means necessary that the applicant for the writ should be a party to the suit or proceeding against which the writ is sought.

See note to State v. Superior Court (Wash.), 111 Am. St. Rep. p. 970, whereat the authorities are collated.

"In this state we have ruled that proceedings in prohibition in the Supreme Court are governed by the general law, and not by our statutes; that the statutes as to the parties to the action have reference to the circuit court, and not to this court. State ex rel. v. Eby, 170 Mo. loc. cit, 528, 71 S. W. 1133. In fact, as said in the Wear Case, 135 Mo. loc. cit. 257, 36 S. W. 363, 33 L. R. A. 341:

" 'The statute governing proceedings in prohibition makes no change in the ancient law on these points. Laws 1895, p. 95.'

"The statute itself leaves much to the common law, or, as it says, 'the general principles of law.' Unless there are specific directions in the statutes, the last section (section 2065, R. S. 1919) provides that 'proceedings . . . shall be governed and continued in accordance with the existing rules of general law upon the subject.' So that, absent a statute precluding a stranger to the cause from proceeding in prohibition, the common law remains intact, and permits such action. Relators can therefore maintain the proceeding."

The law is well settled in this state that even if the relators are strangers to the will contest suit they have a right to maintain this action.

█ Respondent contends that since relators are admittedly nonresident enemy aliens they have no right to prosecute this action for prohibition.

Section 7(b) of the Trading with the Enemy Act, 50 U. S. C. A. 18, Act of October 6, 1917, is declaratory of the common law upon that subject and provides in part as follows: ". . . Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within █ the United States by an enemy or ally of enemy prior to the end of the war, except as provided in Section 10 hereof . . . and provided further, That an enemy or ally of enemy may defend by counsel any suit in equity or action in law which may be brought against him."

The exception contained in Section 10 of this act deals with patents, trademarks and copyrights, and is not pertinent to the consideration of the matter at bar.

There can be no doubt that under the Trading with the Enemy Act a non-resident enemy alien is precluded from suing in the federal or state courts. Ex parte Colonna, 62 S. Ct. 373, 314 U. S. 510, 86 L. Ed. 379; The Leontios Teryazos Szanti v. Teryazos, 45 Fed. Supp. 618. But this same act gives a non-resident alien the right to defend by counsel an action brought against him.

In the case of McVeigh v. United States, 11 Wall. 259, 20 L. Ed. 80, the plaintiff in error was made defendant in the District Court of the United States for the District of Virginia in a libel of information, under the Act of July 17, 1862, to reach, for the purposes of for-

feiture and sale, real and personal property. The defendant was a resident of the city of Richmond, within the Confederate lines, and a Confederate. As a defendant in that suit, he appeared by counsel and filed an answer claiming to be the owner of the property. The attorney for the United States filed a motion to strike the appearance, claim and answer for the reasons that the defendant in that case was "a resident of the City of Richmond, within the Confederate lines, and a rebel." This motion was sustained and a decree *pro confesso* was taken. The property was condemned as forfeited and ordered sold. It was also contended that the plaintiff in error was incompetent to sue out this writ of error.

That court held that the trial court erred in sustaining the motion to strike and that the plaintiff had a right to maintain the writ of error. In passing on the latter point, the court said: "Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country (Clarke v. Morey, 10 Johns. 69; Russell v. Skipwith, 6 Binn. 241), it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defense."

The case of Rau v. Rowe, 184 Ky. 841, 213 S. W. 226, involved a contest between a widow who was a citizen of the United States and heirs-at-law who were non-resident enemy aliens, being citizens and residents of Germany. The trial court ruled in favor of the widow and the non-resident enemy aliens took an appeal. The widow moved to dismiss the appeal on the ground that non-resident enemy aliens had no right to appeal. In denying the motion, that court said:

"The relation of appellants to this case being purely defensive, there is nothing in the law that will prevent them from relying upon any ground of defense or remedy in resistance of appellee's claims referred to that might not be pleaded or relied upon by a resident citizen of this country with like rights in the estate of the decedent."

To the same effect are the following cases: State ex rel. Biering v. District Court, 140 Pac. 2d (Mont.) 583; In re Henrichs' Estate, 179 Pac. (Cal.) 883; Schott et al. v. Schott's Executor, 182 S. W. 2d (Ky.) 220.

The relators claim an interest in the estate of Conrad H. Mann under the laws of descent and distribution of the State of Missouri if he died intestate, and the respondent has found that he did die intestate by his judgment in the will contest suit. By this writ of prohibition, relators seek to prevent the respondent from sustaining the movants' motion to set aside the judgment in the will contest case and by that action establish the will that was probated in the probate court, thus defeating the relators' rights to inherit from the estate of their deceased brother. This writ of prohibition is purely a defensive action on the part of relators. By this writ they are merely defending their right of inheritance under the laws of this state.

We therefore rule that the relators have ▆▆▆ the right to maintain this writ of prohibition.

From what we have said, it follows that the preliminary rule should be made absolute. It is so ordered. All concur.